GARY E. ROHDE, Secretary, Department of Agriculture
Your predecessor requested my opinion on a number of questions pertaining to the milk stabilization provisions of sec. 96.21, Stats., Wisconsin's milk marketing law. The Department of Agriculture has received a petition requesting that it adopt a marketing order, as proposed by the petitioners, establishing minimum prices for milk produced and sold for manufacturing dairy products. A technical advisory committee was appointed to review the marketing order proposal and make recommendations to the department concerning the feasibility of such an order. The committee concluded that the adoption of such an order would not be feasible or effectuate the basic purposes or objectives of the law, whereupon the Board of Agriculture rejected the petition without submitting the proposal to a public hearing under secs.96.04 and 96.05, Stats., on the ground that it would not be feasible or accomplish the basic purpose or objectives of sec. 96.21, Stats. As a result of such action, the questions set forth below have arisen.
You first ask:
 When the department is presented with a petition for the adoption of a proposed marketing order under s. 96.21 is it required to submit the proposed order to a public hearing under ss. 96.04 and 96.05, if it is of the opinion the order *Page 199 
would not be feasible, or may it in its discretion reject the petition and proposed order without public hearing, giving its reasons therefor, if in its judgment the proposed order would not effectuate the basic purposes or objectives of the milk stabilization provisions of s. 96.21?
The pertinent section of the milk stabilization provisions, sec. 96.21 (3) (a), Stats., states:
 "Upon petition by 5% or 100, whichever is less, of the milk producers in the marketing area proposed in the petition to be affected by a marketing order under this section and after notice and hearing under ss. 96.04
and 96.05, the secretary may issue a marketing order establishing minimum prices at which milk may be purchased from milk producers in the affected area. Different minimum prices may be established for various marketing areas in the state."
The petition contained over 600 signatures of milk producers in the marketing area, which is clearly in excess of the minimum required. We may also conclude that the petitioners will, along with the entire state, be affected by the marketing order. The statute then specifies that ". . . and after notice and hearing under ss. 96.04 and 96.05, the secretary may issue a marketing order, . . ."
Section 96.04 (1), Stats., states:
 "Whenever the secretary has reason to believe that the issuance of a marketing order or amendments to an existing marketing order will tend to effectuate the declared policy of this chapter with respect to any agricultural commodity, he shall, either upon his own motion or upon petition signed by 5% or 100 of the producers or handlers of such agricultural commodity, whichever is less, give due notice of and an opportunity for a public hearing upon a proposed marketing order or such amendments to such existing marketing order. . . ." (Emphasis added.)
The language of sec. 96.04 (1) and sec. 96.21 (3) (a) indicates that the legislature intended a hearing to be required upon valid petition. Therefore, when the department is presented with a petition for the adoption of a proposed marketing order under sec. 96.21, it is required to submit the proposed order to a public hearing under secs. 96.04 and 96.05. *Page 200 
Your second question reads:
 In the adoption of a marketing order, must the department take into consideration all of the factors or criteria listed under s. 96.21 (3)(b) or can it omit some from consideration, such as supply and demand factors?
Section 96.21 (3) (b), Stats., states:
 "In establishing minimum prices for milk purchased from producers the following economic factors shall be taken into consideration:
 "1. The differing methods by which milk is produced and transported;
 "2. Reasonable and necessary costs of production and transportation, including a reasonable return on investment;
"3. Quantities of dairy products consumed; and
 "4. Other economic factors which substantially and directly affect supply and demand of milk and dairy products."
The legislative intent of this section is clear. The statute prescribes that the department shall take into consideration all the above factors. Therefore, in the adoption of a marketing order, the department must take into consideration all of the factors or criteria listed under sec. 96.21 (3) (b), and may not omit any from consideration.
Third, you ask:
 Do general substantive and procedural provisions of Chapter 96 apply to marketing orders under s. 96.21, or is s. 96.21 to be interpreted as being totally separate and independent of other qualifying conditions in Chapter 96 relating to adoption of marketing orders?
The policy considerations of ch. 96 (see sec. 96.02) and sec. 96.21 (see sec. 96.21 (1)) are substantially the same. Both policy statements are concerned with the health and welfare of the citizens of the State of Wisconsin. There are, however, marginal differences. Whereas the policy consideration stated in sec. 96.02 is directed towards the orderly and efficient marketing of agricultural *Page 201 
commodities in general, the policy statement in sec. 96.21 (1) carries this same notion one step further by authorizing the Department of Agriculture to establish reasonable prices for the producers of milk. Although some variations between the two exist, sec. 96.21 should not be interpreted as being totally separate and independent of ch. 96.
There are, aside from similarities of policy statement, other considerations which suggest that the substantive and procedural provisions of ch. 96 apply to marketing orders under sec. 96.21. The words and terms used in sec. 96.21 are defined in the beginning of ch. 96 in sec. 96.01. The term "marketing order," for example, as defined in 96.01 (1), means "an order issued by the secretary of agriculture under this chapter." (Emphasis added.) "Marketing order" is then referred to throughout the chapter, including sec. 96.21 (3) (a). When sec. 96.21 was enacted in 1973, there was no attempt to regard this section or any of the terms therein as being totally separate and independent of ch. 96.
The link between sec. 96.21 and ch. 96 becomes more apparent when the procedural provisions of sec. 96.21 are closely analyzed. The provisions of sec. 96.21 (3) incorporate the notice and hearing requirements of secs. 96.04 and 96.05, and suggest that the secretary may not issue a marketing order for milk until the procedural requirements of secs. 96.04 and 96.05 are satisfied. These provisions of sec. 96.21 (3) (a) could not stand independently from the rest of ch. 96.
Section 96.21 makes reference to other sections of ch. 96. Section 96.21 (3) (c) states that "Section 96.07 (1) (a) does not apply to marketing orders issued under this section." Since the framers of sec. 96.21 were careful to exclude sec. 96.07 (1) (a), the obvious inference is that other sections in ch. 96 are applicable.
Therefore the general substantive and procedural provisions of ch. 96 apply to marketing orders under sec. 96.21, and sec. 96.21 is not to be interpreted as being totally separate and independent of other qualifying conditions in ch. 96 relating to the adoption of marketing orders.
Your fourth question reads:
 Are marketing orders adopted under s. 96.21 subject to referendum or assent approval by producers under s. 96.07, or *Page 202 
are such marketing orders exempt from referendum or assent approval by virtue of s. 96.21 (3) (c)?
Section 96.21 (3) (c), Stats., states:
 "Section 96.07 (1) (a) does not apply to marketing orders issued under this section."
Section 96.07 (1) (a) provides generally that major marketing orders, or amendments, relating to a commodity directly affectinghandlers or specifically named processors shall not be effective until assented to by a prescribed segment of handlers orprocessors of the commodity. Section 96.07 (1) (b) contains similar language to sec. 96.07 (1) (a), but refers only toproducers.
Section 96.21 (3) (c) states that the sec. 96.07 (1) (a) referendum provision does not apply to sec. 96.21 marketing orders. Therefore, marketing orders adopted under sec. 96.21 clearly would not be subject to referendum or assent approval by handlers and processors. If, however, the legislature had desired to include producers under the provisions of sec. 96.21 (3) (c), it would have specified that sec. 96.07 (1) (a) and (b) do not apply to marketing orders issued under sec. 96.21. Since the legislature did not so specify sec. 96.07 (1) (b), it continues to have application; and marketing orders adopted under sec. 96.21 are subject to referendum or assent approval by producers.
Therefore, marketing orders adopted under sec. 96.21 are subject to referendum or assent approval by producers.
Your fifth question is:
 Can the Secretary of Agriculture, who is appointed by the Board of Agriculture under s. 15.05 (1)(b), act independently of the Board in the issuance, administration and enforcement of marketing orders under Chapter 96, and more specifically s. 96.21 (3), or can he execute those functions only with the approval of, or under the direction and supervision of the board, as the head of the department, under ss. 15.05 (1)(b) and 15.13?
The secretary of the Department of Agriculture is appointed pursuant to sec. 15.05 (1) (b), Stats., which states: *Page 203 
 "If a department is under the direction and supervision of a board, the board shall appoint a secretary to serve at the pleasure of the board, . . . outside the classified service. In such departments, the powers and duties of the board shall be regulatory, advisory and policy-making, and not administrative. All of the administrative powers and duties of the department are vested in the secretary, to be administered by him under the direction of the board. The secretary, with the approval of the board, shall establish rules for administering the department and performing the duties assigned to the department." (Emphasis added.)
Generally, the secretary of a department under the supervision and direction of a board must obtain board approval for administrative rules promulgated in the performance of the duties of the department. Marketing orders issued pursuant to ch. 96, Stats., are in the nature of administrative rules. See secs.96.04 and 96.05, Stats. However, sec. 96.03, Stats., grants the Secretary of Agriculture authority to administer and enforce the statutes relating to marketing orders. This provision derives from ch. 511, sec. 3, Laws of 1957, and precedes the enactment of the last sentence (emphasized, in part, above) of sec. 15.05 (1) (b), Stats., by ch. 366, sec. 3, Laws of 1969. Accordingly, the specific provisions of sec. 96.03, Stats., constitute an exception to the general requirement of board approval of administrative rules.
Therefore, even though the Secretary of Agriculture is appointed by the Board of Agriculture under sec. 15.05 (1) (b), Stats., the secretary can, nevertheless act independently of the board in the issuance, administration and enforcement of marketing orders under ch. 96 and sec. 96.21 (3). Those functions do not need the approval of, or the direction and supervision of the board.
BCL:TLP *Page 204